**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-10197 |
| *Plaintiff-Appellee*, | D.C. No. 3:19-cr-00038-MMD-CLB-1 |
| v. | |
| EDWARD KNIGHT, | OPINION |
| *Defendant-Appellant*. | |

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du, Chief District Judge, Presiding

Argued and Submitted November 16, 2022
San Francisco, California

Filed January 4, 2023

Before: Sidney R. Thomas and Mark J. Bennett, Circuit
Judges, and Robert S. Lasnik,[*] District Judge.

Opinion by Judge Lasnik

---

[*] The Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

# SUMMARY[**]

### Criminal Law

The panel affirmed Edward Knight's robbery convictions in a case in which a juror participated remotely in the first two days of trial.

Knight asserted that permitting a juror to participate remotely via Zoom violated his Fifth and Sixth Amendment rights, that the error was structural and could not be waived, and that he is therefore entitled to a new trial without having to show prejudice.

The panel assumed without deciding that criminal defendants have a constitutional right to the in-person participation of jurors during their trial. Knight asserted that the alleged error is akin to depriving him of his right to a jury trial, depriving him of his right to a fair and impartial jury, depriving him of a representative jury, and/or depriving him of his right to confront witnesses. The panel wrote that none of these comparisons is apt, as there is no indication in the record—and no reason to suppose—that the remote participation of a duly empaneled juror interfered with the functioning of the jury, somehow made that juror partial or unrepresentative, or impacted the procedures used for the presentation of witnesses. The panel wrote that allowing remote juror participation does not impact the entire framework of the trial in ways that cannot be accurately measured on review. Rather, it merely creates room for the types of problems and errors identified by Knight, such as

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

difficulties in seeing exhibits, hearing testimony, and/or viewing witnesses. But none of those errors will necessarily arise simply because a juror is participating remotely. The panel wrote that there is no case law or record evidence to support a presumption that the remote participation of a juror will always render a trial unfair and the judgment unreliable; the alleged error simply does not fall within the limited class of structural errors that cannot be waived and which require automatic reversal.

Noting that non-structural errors can be waived, the panel wrote that the procedure the district court used to confirm that Knight's waiver was knowing, voluntary, and intelligent was sufficient. Knight conceded that he consented to remote juror participation, but argued that the district court did not obtain a valid waiver because it did not inform him of the constitutional nature and implications of waiver. The panel wrote that this argument fails in light of Knight's knowing, intentional, and voluntary abandonment of the claimed right.

The panel addressed other issues in a concurrently filed memorandum disposition.

## COUNSEL

Wendi L. Overmyer (argued) and Aarin E. Kevorkian, Assistant Federal Public Defenders; Rene L. Valladares, Federal Public Defender; Federal Public Defender's Office, Las Vegas, Nevada; for Defendant-Appellant.

William R. Reed (argued), Peter H. Walkingshaw, and Robert L. Ellman, Assistant United States Attorneys; Jason M. Frierson, United States Attorney; Elizabeth O. White,

Appellate Chief; Office of the United States Attorney, Reno, Nevada; Daniel D. Hollingsworth, Attorney, Office of the United States Attorney, Las Vegas, Nevada; for Plaintiff-Appellee.

## OPINION

LASNIK, District Judge:

In July 2019, two stores were robbed in Sparks, Nevada. After a six-day trial, Knight was convicted of the robberies and sentenced to 169 months' imprisonment followed by five years of supervised release. We consider in this opinion Knight's argument that the convictions must be vacated because the district court structurally erred by permitting a juror to participate remotely in the first two days of trial. The other issues Knight raises on appeal are addressed in a separate Memorandum Disposition filed concurrently with this Opinion.

I.

Knight's criminal trial began on March 8, 2021, with jury selection. The jury was empaneled that day. The next morning, Juror 10 notified the court that his wife was ill. Given the possibility that Juror 10 could be infected with the COVID-19 virus, the district court conferred with the parties to determine how best to proceed, proposing three options:

> One is to allow [Juror 10] to participate in the trial by Zoom. He could listen to the testimony, view the evidence by Zoom, and if by the time the jury begins deliberation he is—his wife is clear, then he can join the

> deliberation; if not, then I would dismiss him at the time if he could not join the deliberation. That way, I still have two alternates for awhile [sic].
>
> The second option is to dismiss him and have one alternate for the trial, really, before opening even starts.
>
> The third option is to delay trial until [Juror 10] can – is, essentially, permitted to return to normal activities.

The government preferred that Juror 10 be excused from service, citing potential technological problems with remote service. Knight's counsel recognized that sharing exhibits with a remote juror would require a collaborative solution and that the juror should be admonished to not access the internet, not use his phone, and devote his full attention to the proceedings, but preferred the first option over dismissal or delay. The district court then addressed Knight directly:

> THE COURT: . . . Mr. Knight, if—you can insist that all the jurors participate at the trial in person. But if you agree to have [Juror 10] watch the trial via Zoom—and of course he would have to participate with deliberations in person, but, for now, he could watch the trial via Zoom. If you consent to it, I will take that approach.
>
> Do you agree?

>  DEFENDANT KNIGHT: Yes, ma'am. I agree.
>
>  THE COURT: Have you had a chance to talk to your attorney about that option before consenting?
>
>  DEFENDANT KNIGHT: Yes, ma'am.
>
>  THE COURT: I want to make sure you understand that you have the option of electing not to proceed with that option. If you object to proceeding with that option, I will not proceed with that option.
>
>  Do you understand that?
>
>  DEFENDANT KNIGHT: Yes, ma'am.
>
>  THE COURT: Knowing that, is it still your decision to consent to have [Juror 10] participate and view the trial via Zoom?
>
>  DEFENDANT KNIGHT: Yes, ma'am.
>
>  THE COURT: All right.
>
>  I find that Mr. Knight understands that he has the right to insist that [Juror 10] participate in the trial in person, and he's waived that right and consents to have [Juror 10] view the trial via Zoom for now.

At the end of the day, the district court noted for the record that she and her clerk could see Juror 10 on their computer screens and that the clerk and Juror 10 had established a procedure for him to notify the clerk if he were not able to hear or see what was going on in the courtroom.

By that point, the government had identified "five serious concerns" with proceeding with a remote juror and requested that Juror 10 be excused and replaced with one of the alternates. The government argued that if its objections were overruled, the district court should again question Knight and his counsel to confirm their consent to proceeding with a remote juror and to obtain a waiver of any right to challenge the remote juror procedure on appeal. Defense counsel reiterated that Mr. Knight fully consented to the juror's remote participation, but he declined to waive his client's right to attempt to vitiate that consent on appeal or to challenge a defect that might arise out of the remote participation. The district court recognized that there might be challenges raised on appeal, such as an assertion that the waiver was not knowing and voluntary or an argument that the asserted right to an in-person jury cannot be waived, but wanted Knight's agreement that "he's not going to challenge his own consent to have [Juror 10] participate by video." Defense counsel offered to "make a full record that [Knight] absolutely was advised appropriately, and that he fully consents, and that his consent . . . is knowing, voluntary, and intelligent, a hundred percent." The district court again addressed Knight directly:

> THE COURT: . . . Mr. Knight, let me ask you again. You've heard some exchange now. I want to make sure that you know you have a right to insist that [Juror 10] participate at this trial in person.

Case: 21-10197, 01/04/2023, ID: 12622355, DktEntry: 50-1, Page 8 of 13

8 UNITED STATES V. KNIGHT

>Do you understand that?
>
>DEFENDANT KNIGHT: Yeah. I understand what's going on.
>
>THE COURT: And this morning you've had a chance to talk to your attorney about waiving that right and allowing [Juror 10] to participate by video, is that right?
>
>DEFENDANT KNIGHT: Yes, ma'am.
>
>THE COURT: Having conferred with your attorney, is it your decision to consent to have [Juror 10] . . . participate and view this trial by video?
>
>DEFENDANT KNIGHT: Yes, ma'am.
>
>THE COURT: All right.
>
>I still find that Mr. Knight understands his right, and that his consent is knowing and voluntary and I will accept his consent.

With the consent of Knight and his counsel, Juror 10 participated remotely via Zoom for two days. Juror 10 was able to return to the courtroom on March 11th.

## II.

On appeal, Knight asserts that permitting a juror to participate remotely in his criminal trial violated his Fifth and Sixth Amendment rights, that the error was structural and could not be waived, and that he is therefore entitled to

a new trial without having to show prejudice. We will assume without deciding that criminal defendants have a constitutional right to the in-person participation of jurors during their trial. Nevertheless, Knight has not shown that a violation of that right constitutes reversible error in the absence of resulting prejudice.

Structural errors "infect the entire trial process," *Brecht v. Abrahamson*, 507 U.S. 619, 630 (1993), and "necessarily render a trial fundamentally unfair," *Rose v. Clark*, 478 U.S. 570, 577 (1986)). They are also "rare." *Washington v. Recuenco*, 548 U.S. 212, 218 (2006). The Supreme Court has "repeatedly recognized that the commission of a constitutional error at trial alone does not entitle a defendant to automatic reversal." *Id.* Indeed, "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred" are not structural and are subject to the harmless-error analysis of Fed. R. Cr. P. 52(a). *Neder v. United States*, 527 U.S. 1, 8 (1999) (quoting *Rose*, 478 U.S. at 579). The limited circumstances in which structural errors have been found include a biased trial judge, *Tumey v. Ohio*, 273 U.S. 510 (1927), denial of counsel, *Gideon v. Wainwright*, 372 U.S. 335 (1963), denial of self-representation, *McKaskle v. Wiggins*, 465 U.S. 168 (1984), denial of public trial, *Waller v. Georgia*, 467 U.S. 39 (1984), race discrimination in the selection of the grand jury, *Vasquez v. Hillery*, 474 U.S. 254 (1986), directing entry of judgment in favor of the prosecution, *Rose*, 478 U.S. at 578, a defective reasonable-doubt instruction, *Sullivan v. Louisiana*, 508 U.S. 275 (1993), and failing to give oral instructions to the jury, *United States v. Becerra*, 939 F.3d 995 (9th Cir. 2019). Defining features of a structural error include that (1) it deprives defendants of the "basic

protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence," *Neder*, 527 U.S. at 8-9 (internal quotation marks and citation omitted), and (2) it "def[ies] analysis by harmless error standards" because (a) the right at issue protects some interest other than avoiding erroneous convictions, (b) the effects of the error are difficult to identify or measure, and/or (c) the error is of a nature that "always results in fundamental unfairness," *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907–08 (2017) (internal quotation marks and citation omitted).

Knight asserts that the error alleged here, namely allowing a juror to participate in a criminal trial via Zoom, is akin to depriving him of his right to a jury trial, depriving him of his right to a fair and impartial jury, depriving him of a representative jury, and/or depriving him of his right to confront witnesses. None of these comparisons is apt. There is no indication in the record—and no reason to suppose—that the remote participation of a duly empaneled juror interfered with the functioning of the jury, somehow made that juror partial or unrepresentative, or impacted the procedures used for the presentation of witnesses. Unlike a deprivation of counsel, a biased adjudicator, or the failure to ensure that the jurors are instructed on the law, allowing remote juror participation does not impact the entire framework of the trial in ways that cannot be accurately measured on review. Rather, it merely creates room for the types of problems and errors identified by Knight, such as difficulties in seeing exhibits, hearing testimony, and/or viewing witnesses. But none of those errors will necessarily arise simply because a juror is participating remotely. Knight asks us to presume that the remote participation of a juror will always render a trial unfair and the judgment unreliable,

but there is no case law or record evidence to support such a presumption.[1] The alleged error simply does not fall within the limited class of structural errors that cannot be waived and which require automatic reversal.

Non-structural errors can be waived. "'No procedural principle is more familiar to [the Supreme Court] than that a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.'" *United States v. Olano*, 507 U.S. 725, 731 (1993) (quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944)). The government argues that Knight knowingly, intentionally, and voluntarily waived any right he may have had to the in-person participation of Juror 10. We review the adequacy of a criminal defendant's waiver of constitutional rights de novo. *United States v. Laney*, 881 F.3d 1100, 1106 (9th Cir. 2018).

Waiver is the "intentional relinquishment or abandonment of a known right." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Where a waiver would deprive the defendant of a constitutional right, courts generally require that it be a voluntary, knowing, and intelligent choice among alternative courses of action, made without coercion and with sufficient awareness of the relevant circumstances and likely consequences that would arise from the waiver. *See, e.g.*, *Brady v. United States*, 397 U.S. 742, 748–49 (1970);

---

[1] In fact, jurors, attorneys, and trial judges who have participated in remote trials largely commend the process, noting advantages in observing witnesses and assessing body language and demeanor. Jud. Council of the Ninth Cir., 2020 Annual Report, U.S. Cts. for the Ninth Cir. 27, https://cdn.ca9.uscourts.gov/ datastore/judicial-council/publications/AnnualReport2020.pdf.

*Parke v. Raley*, 506 U.S. 20, 29 (1992). "Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *Olano*, 507 U.S. at 733.

The procedure that the district court used in this case to confirm that the waiver was knowing, voluntary, and intelligent was sufficient. Knight was specifically informed on several occasions that he had the right to insist that all jurors be present in the courtroom and, when questioned by the district court, he indicated that he understood that he had that right. Knight was present when the various options for dealing with Juror 10's situation were discussed, including the juror's dismissal and replacement with an alternate. He was present as counsel identified all the things that could go wrong with remote participation. And he affirmatively indicated that he understood what was going on. Having had the opportunity to confer with counsel, Knight chose to waive the right to have all jurors participate in person and agreed to Juror 10's remote participation.

The district court found that the waiver was knowing and voluntary. Knight concedes that he consented to remote juror participation, but argues that the district court did not obtain a valid waiver because it did not inform him of the constitutional nature and implications of waiver. The argument is unavailing. It fails in light of Knight's knowing, intentional, and voluntary abandonment of the claimed right. The district court repeatedly advised Knight that he could insist on in-person juror participation at any time, ensured that Knight spoke with his counsel about the waiver, and fully considered concerns raised by both parties. There can

be no error if the rule on which the defendant relies has been effectively waived. *Olano*, 507 U.S. at 732–33 ("The first limitation on appellate authority under Rule 52(b) is that there indeed be an 'error.' Deviation from a legal rule is 'error' unless the rule has been waived. For example, a defendant who knowingly and voluntarily pleads guilty in conformity with the requirements of Rule 11 cannot have his conviction vacated by court of appeals on the grounds that he ought to have had a trial. Because the right to trial is waivable, and because the defendant who enters a guilty plea waives that right, his conviction without a trial is not 'error.'"). The district court did not err when proceeding with a remote juror given Knight's knowing, voluntary, and intelligent waiver of any right he may have had to the juror's in-person participation.

**AFFIRMED.**